NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KUSLIMA SHOGEN, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> GLOBAL AGGRESSIVE GROWTH : <br> FUND, LTD., et al. : <br> : <br> Defendants. : | Civil Action No. 04-5695 (SRC) <br><br> **OPINION** |

**CHESLER, District Judge**

**THIS MATTER** comes before the Court on Plaintiff Kuslima Shogen's motion for reconsideration [docket # 108] of the Order signed by this Court on April 26, 2007, [docket #106], which granted partial summary judgment to Defendants Sam Witchel, Gregory ("Greg") Witchel and Scharff, Witchel & Co., Inc. ("Scharff Witchel" and collectively, "Witchel Defendants") and Defendant Richard S. Cohen ("Cohen"). This Court has considered the submissions of the parties in connection with this motion, and pursuant to Federal Rule of Civil Procedure 78, adjudicates the motion based on the papers submitted. For the reasons discussed below, this Court **DENIES** Plaintiff's motion for reconsideration.

**I.     BACKGROUND**

This case arose out of a collateralized stock pledge loan transaction gone wrong.  The facts surrounding this dispute were recounted at length in the Court's Opinion in *Shogen v. Global Aggressive Growth Fund, Ltd., et al.*, No. 04-5695 (SRC), 2007 WL 1237829 (D.N.J. Apr. 26, 2007).  Briefly, Defendants were intermediaries in a transaction in which Plaintiff pledged over $400,000 worth of personal shares in Alfacell Corporation ("Alfacell"), a biopharmaceutical company with headquarters in New Jersey of which Plaintiff is the CEO.  Plaintiff sought the loan in order to alleviate Alfacell's weak financial situation.  Although Plaintiff believed, based on assurances from the Witchel Defendants and Cohen, that her pledged shares could not be sold unless she defaulted on her loan payments, the lender, Global Aggressive Growth Fund, Ltd., sold Plaintiff's pledged collateral shares, which were worth well in excess of the $167,000 loan she had received.

Plaintiff filed a Complaint in this Court on November 18, 2004, in which she alleged thirteen causes of action against the Witchel Defendants and Cohen.  In the Court's Order of April 26, 2007, it granted summary judgment to the Witchel Defendants and Cohen on nine counts and denied summary judgment on four counts.  Plaintiff's motion for reconsideration requests that the Court reverse itself and deny summary judgment on her claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty.  The Court assumes the parties' familiarity with the factual and procedural background of plaintiff's claims.

**II.    STANDARD FOR RECONSIDERATION**

Local Civil Rule 7.1(i) creates a procedure by which a court may reconsider its decision

upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. *Bowers v. Nat'l Collegiate Athletic Assoc.*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rendering its decision. *See Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 856-57 (D.N.J. 1992), *aff'd*, 37 F.3d 1485 (3d Cir. 1994). Rather, "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A motion under Rule 7.1(i) may be granted only if: "'(1) [A]n intervening change in the controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice.'" *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (alteration in original, quoting *Weyerhaeuser Corp. v. Koppers Co.*, 771 F.Supp. 1406, 1419 (D.Md.1991)); *Database Am., Inc. v. Bellsouth Advert. & Publ'g Corp.*, 825 F. Supp. 1216, 1220 (D.N.J.1993). Finally, because reconsideration is an extraordinary remedy, it is to be granted very sparingly. *See NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996); *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986).

III.   **DISCUSSION**

A.   Breach of Contract Claim

Plaintiff has moved for reconsideration of the Court's Order granting summary judgment on her breach of contract claims against the Witchel Defendants and Cohen. Plaintiff does not point to any new evidence or intervening change in controlling law, but instead argues that the Court's conclusions were erroneous as a matter of fact and law. However, Plaintiff has not

pointed to any evidence that the Court overlooked in its previous Opinion, nor is there any indication that the Court's conclusions of fact and law were clearly erroneous.

1. **Witchel Defendants**

In its previous Opinion, which granted the Witchel Defendants summary judgment on Plaintiff's breach of contract claim, the Court noted that "[Plaintiff's] deposition testimony does not allege that the Witchel Defendants manifested an intention to be bound by explicit terms." *See Shogen*, 2007 WL 1237829 at *15. Plaintiff's motion for reconsideration recounts, *inter alia*, her initial conversation with Greg Witchel. Plaintiff testified that Greg Witchel indicated to her that Scharff Witchel would "[f]ind an appropriate lender . . . arrange the appropriate transaction; qualify the lender; make sure it's a quality lender, because Mr. Witchel knows that my major concern was that my shares be . . . in a safe situation." (Shogen Dep. vol. 1, 107:11-15, Sept. 9, 2005.) Plaintiff further testified that Greg Witchel indicated to her that he would advise her on the transaction, find her a reputable lender and secure her a favorable interest rate.[1] (Shogen Dep. vol. 1, 113:6-25.)

The Court noted in its prior Opinion that under New Jersey law "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Shogen*, 2007 WL 1237829 at *15 (quoting *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) (quoting *W. Caldwell v. Caldwell*, 26 N.J. 9, 24-25 (1958))). "In order to be enforceable, the terms of any contract--oral

---

[1] The Court referenced, without specifically citing to this conversation in its prior Opinion: "According to Shogen, Greg Witchel indicated to her that Scharff Witchel had participated in a number of similar transactions before and would find Shogen a reputable lender and a favorable interest rate." *Shogen*, 2007 WL 1237829 at * 1.

or written--must be sufficiently clear and capable of judicial interpretation." *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 618 (D.N.J. 2001). At no point, however, did the Witchel Defendants attempt to negotiate specific contract terms for Plaintiff and Plaintiff has not testified that they ever promised to do so. In short, the Witchel Defendants cannot breach a contract term to which they never agreed.

Plaintiff's conversations with Greg Witchel do not indicate an offer and acceptance occurred or that the discussion was sufficiently definite to ascertain discrete terms aside from a general obligation on the part of the Witchel Defendants to use their best efforts to help Plaintiff obtain a loan. In Greg Witchel's initial meeting with Shogen, he described the type of services that Scharff Witchel typically performs for borrowers. He did not agree to perform specific duties for Plaintiff. In other words, the Witchel Defendants agreed to find Plaintiff a lender and render general advice in her effort to secure a loan. In turn, Plaintiff paid them a finder's fee for services rendered. However, the Witchel Defendants never promised Plaintiff they would secure a particular type of loan or a loan contract with any specific terms, such as the amount of principle or the interest rate.[2]

Plaintiff argues that because she paid $9,800 to the Witchel Defendants she necessarily had an oral contract with them and only the terms of that contract are truly in dispute. What, Plaintiff asks, were the Witchel Defendants paid to do if not agree to a contract manifesting the intent to be bound by specific duties? The answer is Plaintiff believed the Witchel Defendants

---

[2] Initially, the Witchel Defendants attempted to find a private equity investor who would fund a PIPE for Alfacell. *See Shogen*, 2007 WL 1237829 at *1 (explaining how a PIPE transaction is funded). However, when the Witchel Defendants were unable to find an investor willing to fund a PIPE for Alfacell they turned to the Ruby Group and suggested that Plaintiff pledge her personal shares as part of a collateralized stock pledge loan.

had found her a viable lender who would, in turn, provide much needed funds for the financially struggling Alfacell. As the Court noted in its prior Opinion, any false representations made by the Witchel Defendants may serve as a basis for a negligence claim, a violation of the Securities Act, negligent misrepresentation, or equitable fraud. They do not, however, indicate the existence of a valid contract to achieve a particular result, such that a failure to achieve that particular result would constitute a breach of contract. Therefore, at best, Plaintiff has alleged a contract to provide services, but without any specific and definite terms which might give rise to a breach of contract.

Finally, Plaintiff quotes the Third Circuit's opinion in *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 287 (3d. Cir. 1993), which noted that "[t]he question of whether the parties have mutually assented to a term is peculiarly a question of fact and properly placed with the fact-finder." In *Olefins*, the Third Circuit reversed a ruling by the trial court overturning a jury verdict because the trial court misinterpreted UCC § 2-207. Thus, in *Olefins* the issue was not whether sufficient evidence had been presented as to the existence of a contractual term, but whether UCC § 2-207 prevented that term from becoming part of a contract. By contrast, here Plaintiff failed to produce evidence that the Witchel Defendants agreed to be bound by specific terms. Therefore, *Olefins* does not constitute controlling law which the Court overlooked and the Court did not make clearly erroneous conclusions as to issues of law or fact in granting the Witchel Defendants' motion for summary judgment on Plaintiff's claim for breach of contract.

The Court considered Plaintiff's arguments and supporting testimony that a contract existed between herself and the Witchel Defendants when it granted the Witchel Defendants' motion for summary judgment. On her motion for reconsideration, Plaintiff has not persuaded

6

the Court that its previous conclusions constituted clear legal error. Therefore, reconsideration at this time is improper. Indeed, "mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for reargument." *Yurecko v. Port Auth. Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (D.N.J. 2003).

      2.    **Richard S. Cohen**

In granting Cohen's motion for summary judgment on Plaintiff's breach of contract claim, the Court noted that "[t]he Ruby Group was remitted by Global Aggressive," not by Plaintiff. *Shogen*, 2007 WL 1237829 at *15 n.14. Mutuality of obligation is an essential element of contract under New Jersey law. *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 87 (2002) ("Basic contract principles render a promise enforceable against the promisor if the promisee gave some consideration for the promise"). Plaintiff argues, however, that the fact that she did not pay Cohen does not, in and of itself, preclude the existence of an oral contract between herself and Cohen. But in that case, what was Plaintiff's reciprocal obligation to Cohen under the alleged oral contract? This information Plaintiff does not provide.

Simply put, Plaintiff's opposition brief failed to "designate 'specific facts showing that there [was] a genuine issue,'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), as to whether she had an oral contract with Cohen. Plaintiff's motion for reconsideration now cites various conversations indicating Cohen would be working with the Witchel Defendants and would help Plaintiff secure a proper lender. According to Plaintiff, she "was persuaded by *both* the Witchel Defendants and Cohen that Cohen would be working with the Witchel Defendants on her behalf to structure a secured loan transaction on terms favorable to her and to protect her interests." (Pl. Br. at 7.) This does not, however, establish sufficiently definite contract terms or a mutuality of

obligation.  Parties to a contract must "agree on essential terms and manifest an intention to be bound by those terms[.]"[3]  *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).  "Plaintiff's breach of contract claim cannot survive summary judgement because plaintiff can establish neither specific terms and conditions of [her] alleged oral contract nor the consideration supporting that alleged contract." *Swider*, 134 F. Supp. 2d at 619.  There is, therefore, no basis for reconsidering the Court's prior determination that no oral contract existed between Cohen and Plaintiff, as that determination did not constitute a clearly erroneous conclusion of law or fact.

B.      Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff has moved for reconsideration of the Court's Order granting summary judgment to the Witchel Defendants and Cohen and her claim alleging a violation of the covenant of good faith and fair dealing.  However, as noted in the Court's prior opinion, the existence of "such a covenant presupposes the existence of a valid contract." *Shogen*, 2007 WL 1237829 at *16.  Because the Court will deny Plaintiff's motion for reconsideration as to her claims for breach of contract, it will also deny her motion for reconsideration for her claims for breach of the covenant of good faith and fair dealing.

C.      Breach of Fiduciary Duty

Plaintiff also asks the Court to reconsider its Order granting summary judgment to the

---

[3]  Plaintiff argues the Court overlooked her opposition to Cohen's motion for summary judgment on her breach of contract claim.  The Court, in its previous Opinion, merely noted the lack of opposition in addition to its conclusion that Plaintiff could not have an oral contract with Cohen because, as Cohen was paid by Global Aggressive, a mutuality of obligations did not exist.  As discussed above, Plaintiff's opposition brief did not set forth specific facts creating a genuine issue of fact as to the existence of an oral contract.

8

Witchel Defendants and Cohen on her claims for breach of fiduciary duty. Plaintiff continues to cite portions of her deposition testimony indicating she believed the Defendants were financial experts and that she trusted and relied on them throughout the transaction. She fails, however, to point to an instance where she *expressly* reposed trust or confidence in either the Witchel Defendants or Cohen. *Shogen*, 2007 WL 1237829 at *17; *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551 (App. Div. 1997), *certif. denied* 153 N.J. 402 (1998); *Berman v. Gurwicz*, 189 N.J. Super. 89, 93-94 (Ch. Div. 1981), aff'd 189 N.J.Super. 49 (App. Div.), *certif. denied* 94 N.J. 549 (1983).

Plaintiff also quotes from *In re Cedent Corp. Sec. Litig.*, 139 F. Supp. 2d 585, 609 (D.N.J. 2001) that "a fiduciary relationship exists when one person is 'under a duty to act for or *give advise for the benefit of another* on matters within the scope of their relationship." This, however, simply begs the question of whether there was a duty to advise Plaintiff. Further, the court in *Cedent Corp*. found that the defendant "provided advice upon which it knew [plaintiff] would rely in making important decisions." *Id.* at 610. By contrast, there is no evidence here that the Witchel Defendants or Cohen knew that Plaintiff would rely on them and follow their advice. Rather, Defendants testified that they believed Plaintiff would be acting with counsel on her own behalf. *(See, e.g.*, G. Witchel Dep. 56:5-10, Sept. 12, 2005.) Plaintiff never told them otherwise and has not pointed to any testimony indicating her reliance by stating, for instance, that she told the Witchel Defendants or Cohen that she would rely on their advice. Plaintiff's deposition testimony after the fact that she relied on Defendants' advice does not constitute sufficient evidence that she expressly reposed a trust and confidence in them at the time she was seeking a stock pledge loan. Accordingly, the Court did not make clearly erroneous conclusions

of law or fact in its previous decision to grant Defendants summary judgment on Plaintiff's claim for breach of fiduciary duty.

**IV.    CONCLUSION**

Plaintiff's motion must be denied because it has failed to satisfy the standard governing motions for reconsideration. Plaintiff does not allege any change in controlling legal authority, nor does she argue that any previously unavailable evidence has come to light. Moreover, for the reasons discussed above, Plaintiff has not demonstrated that reconsideration is necessary to correct a clear error of law or to consider information overlooked by the Court in rendering its previous Opinion. Rather, the Court is satisfied that it properly considered all the facts and none of its previous conclusions of law constituted clear error. The standard of review for a motion for reconsideration is high, and relief is granted very sparingly. *See NL Indus., Inc.*, 935 F.Supp. at 516. Plaintiff had not satisfied the Court that she is entitled to such extraordinary relief. Accordingly, the Court **DENIES** Plaintiff's motion for reconsideration. An appropriate form of Order will be filed together with this Opinion.

  /s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.

Date: August 3, 2007